IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ESSIE MARTIN,

       Plaintiff,

v.                         No.

WESTERN MOTORS, INC.
d/b/a WESTERN CHRYSLER DODGE JEEP; and
OHIO CASUALTY INSURANCE COMPANY,

       Defendants.

## COMPLAINT FOR DAMAGES
## AND FOR DECLARATORY RELIEF

1.    Defendant Western Motors, Inc. d/b/a Western Chrysler Dodge Jeep ("Western Motors") coerced Plaintiff into financing a vehicle for her grandson by causing her to believe that she was merely a co-signer and that she could be relieved of all obligations on the loan after six months. Moreover, Western Motors secured the financing by submitting false statements concerning Plaintiff's income to the lender.

2.    Plaintiff brings claims against Western Motors for violations of the federal Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* ("CROA") the New Mexico Unfair Trade Practices Act, NMSA 1978 §§ 57-12-1 *et seq.* ("UPA"), and for common law fraud.

### Jurisdiction and Venue

3.    This Court has jurisdiction under the CROA, 15 U.S.C. § 1679f(c), and under 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4.    Venue is proper in this Court. The events complained of took place in this District. Plaintiff resides in this District. Western Motors is located in this District.

**Parties**

5.      Plaintiff Essie Martin ("Ms. Martin" or "Plaintiff") resides in Hobbs, New Mexico.

6.      Defendant Western Motors is a New Mexico corporation and licensed auto dealer, conducting a new and used auto dealership in Hobbs, New Mexico.

7.      Defendant Ohio Casualty Insurance Company ("Ohio Casualty") is a foreign company that provides auto dealer surety bonds for New Mexico auto dealers.  It provided the surety bond necessary to license Western Motors as an auto dealer, pursuant to NMSA 1978 § 66-4-7.

**Facts**

8.      Ms. Martin's grandson, Keylie Martin ("Grandson") wanted to purchase a vehicle.

9.      In response to an advertisement placed by Western Motors, Ms. Martin suggested that her Grandson consider purchasing a vehicle from Western Motors.

10.     Ms. Martin's Grandson went to Western Motors and found a vehicle that he liked ("Vehicle").

11.     Upon information and belief, Ms. Martin's Grandson did not qualify to finance the vehicle purchase from Western Motors.

12.     Ms. Martin and her Grandson discussed the option of having Ms. Martin co-sign the auto loan.

13.     On December 19, 2006, Ms. Martin went to Western Motors.

14.     Ms. Martin informed a Western Motors representative that she would co-sign her Grandson's auto loan.

15.     The Western Motors representative stated that Ms. Martin would be allowed to terminate

her status as a co-signer after six months.

16. The Western Motors representative asked Ms. Martin's about her employment and income.

17. Ms. Martin provided her employment and income information.

18. Ms. Martin stated that she received employment income of approximately $300 per month.

19. Also, Ms. Martin stated that she received social security income of approximately $680 per month.

20. At the time of the transaction, Ms. Martin's total monthly income was approximately $1,000 per month.

21. The Western Motors representative requested that Ms. Martin provide other personal information, including her social security number and date of birth.

22. Ms. Martin provided the requested personal information.

23. The Western Motors representative filled out a credit application for Ms. Martin.

24. The Western Motors representative instructed Ms. Martin to sign the credit application.

25. Ms. Martin signed the credit application.

26. In the credit application, Western Motors falsely stated that Ms. Martin's income was $3,000 per month.

27. Contrary to its representations, Western Motors named Ms. Martin as the primary applicant on the credit application, not the co-signer.

28. Western Motors did not include Ms. Martin's Grandson on the credit application.

29. Western Motors submitted the credit application to U.S. Bank N.A. ("US Bank").

30.     Upon information and belief, Western Motors secured financing of the Vehicle from US
        Bank based on its false statement of Ms. Martin's income in the credit application.

31.     Upon information and belief, Ms. Martin would not have qualified for financing if
        Western Motors had not made the false statement concerning her income.

32.     The Western Motors representative instructed Ms. Martin to sign several other documents
        ("Documents"), including a Retail Installment Sales Contract ("RISC") concerning the
        financing of the Vehicle ("Vehicle Loan").

33.     The Western Motors representative caused Ms. Martin to believe that she was signing
        Documents related to her agreement to co-sign her Grandson's auto loan.

34.     Ms. Martin was identified as the purchaser in the Documents.

35.     Ms. Martin's grandson was not identified in the Documents.

36.     Western Motors did not provide Ms. Martin with copies of the Documents.

37.     Western Motors did not deliver the Vehicle to Ms. Martin.

38.     Ms. Martin left without taking possession of the Vehicle.

39.     Ms. Martin's Grandson went to Western Motors after Ms. Martin had signed the
        Documents.

40.     Western Motors did not require Ms. Martin's Grandson sign any documents related to the
        transaction.

41.     Western Motors delivered the vehicle to Ms. Martin's Grandson.

42.     Ms. Martin would not have entered into the transaction if she had known that she was not
        the co-signer.

43.     Ms. Martin would not have entered into the transaction if she had known that she would

be liable for the Vehicle Loan for more than 6 months.

44.    Ms. Martin would not have entered into the transaction if she had known that her Grandson was not responsible for the Vehicle Loan.

45.    The RISC was assigned to US Bank.

46.    Approximately six months later, Ms. Martin contacted Western Motors to terminate her status as the co-signer.

47.    Western Motors stated that Ms. Martin could not terminate her status as the co-signer.

48.    Ms. Martin's grandson failed to make timely payments on the Vehicle Loan.

49.    U.S. Bank repossessed the Vehicle.

50.    The repossession of the Vehicle damaged Ms. Martin's credit reputation.

51.    On October 30, 2008, U.S. Bank, its representative or assignee, sold the Vehicle.

52.    Following the sale of the Vehicle, a deficiency balance was allegedly owed on the Vehicle Loan, in the amount of $21,511.59.

53.    Upon information and belief, U.S. Bank sold, or assigned the right to collect, the debt associated with the deficiency balance to a third party.

54.    The collection account associated with the deficiency balance caused Ms. Martin to suffer debt collection harassment.

55.    Western Motors submitted false statements to one or more potential lenders in connection with its sale of the Vehicle to Plaintiff.

56.    An award of punitive damages is appropriate to deter future similar conduct by Western Motors and other car dealers.

57.    Sureties of auto dealer consumer protection bonds – here, Ohio Casualty – are liable for

damages awarded for fraud by their principal dealers – here, Western Motors.  NMSA

1978 § 66-4-7(B) ("bond shall be payable . . . of any loss, damage and expense sustained

by the purchaser or his vendees, or both, by reason of . . . any fraudulent

misrepresentations").  *See also*, *McAlpine v. Zangara Dodge, Inc.,* 2008 NMCA 64, 183

P.3d 975 (Ct. App. 2008).

58.     As a result of Western Motors' actions and omissions, Plaintiff suffered actual damages,

including:

a.       the alleged debt owed related to the financing of the Vehicle;

b.       damage to her credit reputation;

c.       debt collection harassment;

d.       humiliation; and

e.       aggravation and frustration.

### First Claim for Relief:
### Violations of the CROA by Western Motors

59.     Western Motors violated the CROA by submitting a false statement to one or more

potential lenders.  *See*, 15 U.S.C. § 1679b.

60.     Because of Western Motors' misrepresentations, Plaintiff was saddled with terms to

which she did not agree.

61.     Plaintiff is entitled to recover actual damages and punitive damages, in an amount to be

determined at trial, plus attorney fees and costs, against Western Motors.

### Second Claim for Relief:
### Fraud by Western Motors

62.     Western Motors induced Ms. Martin to purchase the Vehicle by misrepresentations and

omissions of material facts, including but not limited to:

a.      representing that Ms. Martin was a co-signer;

b.      representing that Ms. Martin could be terminate her status as co-signer after six

months; and

c.      representing that Ms. Martin's Grandson was a party to the transaction and the

primary obligor on the Vehicle Loan;

63.     Western Motors knew that its representations and omissions were material and important.

64.     Western Motors intended to deceive Ms. Martin and intended that Ms. Martin would rely

upon its misrepresentations, which she did, to her detriment, suffering damages.

65.     Ms. Martin is entitled to actual and punitive damages, in an amount to be proven at trial,

against Western Motors.

66.     Ohio Casualty as the surety for Western Motors' auto dealer consumer protection bond is

liable for all actual damages awarded against Western Motors for fraud and is liable for

all attorney fees and costs accrued by Ms. Martin in prosecuting her fraud claim.

### Third Claim for Relief:
### Violations of the Unfair Practices Act by Western Motors

67.     Western Motors' sale and financing of the Vehicle occurred in the regular course of its

trade or commerce.

68.     Western Motors' actions and omissions constitute unfair trade practices, within the

meaning of the UPA, NMSA 1978 § 57-12-2(D).

69.     Western Motors willfully engaged in these unlawful trade practices.

70.     Ms. Martin is  entitled to recover actual or statutory damages, trebled, plus attorney fees

and costs, against Western Motors.

## Request for Relief

Plaintiff requests that the Court award:

A.      Declaratory relief that Ohio Casualty as the surety for Western Motors' auto dealer consumer protection bond is liable for all actual damages awarded against Western Motors for fraud and is liable for all attorney fees and costs accrued by Plaintiff in prosecuting her fraud claim;

B.      Actual damages and punitive damages, in an amount to be proven at trial, against Western Motors for violations of the CROA;

C.       Actual and punitive damages, in an amount to be proven at trial, against Western Motors for fraud;

D.      Actual or statutory damages, trebled, against Western Motors, for violations of the UPA;

E.      Reasonable attorney fees and costs;

F.      Such other relief as the Court deems just and proper.

Respectfully submitted,

_____

CHARLES PARNALL
FEFERMAN & WARREN, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, New Mexico 87102
(505) 243-7773 phone
(505) 243-6663 fax